IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BETTY J. OSTERGREN,

      Plaintiff,

v.           Civil Action No. 3:08cv362

ROBERT F. MCDONNELL,

      Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW the Defendant, Robert F. McDonnell ("Defendant"), by counsel, in response to the motion for preliminary injunction, and states as follows:

**I.**           **Introduction.**

Plaintiff asks this Court to declare unconstitutional the statutory amendment to Section 59.1-443.2, *Code of Virginia* (1950, as amended) which will go into effect July 1, 2008; however, it is unclear whether she seeks to invalidate the statute on its face or as applied. Plaintiff asserts that the amendment "as applied" to public land records as defined by Section 17.1-292, *Code of Virginia*, will "chill" her free speech rights.

Plaintiff is a self-described alarmed, staunch and passionate privacy advocate and nationwide lobbyist. On her website, she posts individuals' social security numbers to the general public and chronicles her many media appearances, which she makes supposedly with the principal aim of furthering this advocacy. While she focuses on social security numbers of legislators and clerks because she believes they are responsible for online availability of public land records, her website includes social security numbers of individuals who are not public officials and who have no Virginia public land records. In addition, her website states that her concern is not solely with social security numbers, but with other information as well, including birth dates, signatures, full names and maiden names. Her concern only is that this information is online, not that it is available in public land records; indeed, she argues on her website that if people want to see these records, they should have to drive to the courthouse.

The federal government has taken measures to protect individual's social security numbers. See 5 U.S.C. Section 552(b)(6), 31 U.S.C. Section 3327(b) and 42 U.S.C. Section 408(a)(8). With regard to public dissemination of social security numbers, Virginia has attempted to complement the federal example. The statute at issue herein, Section 59.1-443.2, prohibits intentional communication of another individual's social security number to the general public. Custom has resulted in the presence of social security numbers in some public land records. Keeping social security numbers from

public dissemination is a compelling government interest on behalf of citizens. Virginia has enacted a number of provisions to keep social security numbers out of the public domain as much as possible, within necessary budgetary constraints. See Va. Code Sections 2.2-3808.1, 2.2-3808(B), 17.1-227, 17.1-293(B), 17.1-294, 18.2-186.3, 20.121-03, 24.2-107, 24.2-405, 24.2-411.1(E), 24.2-411.2(F)(4), 24.2-416.5, 24.2-444, 24.2-1002.1 and 32.1-267. The statute at issue herein merely is another legislative enactment protecting individual privacy interests by limiting public dissemination specifically of social security numbers.

Importantly, the statute at issue ignores the identity and motive of the person disseminating social security numbers and focuses, instead, solely on the social security number itself in determining the very limited, and highly personal, information that is exempt from dissemination. The statute only addresses social security numbers, which are not merely different from other personal information but are unique personal identifiers. In her court filings in this case, Plaintiff conveys her view that the amended statute is a response to her advocacy. There is no legislative history in Virginia, and Plaintiff should not ask this Court to infer that the entire legislature and governor shared a specific, common intent in amending the statute. In addition, while some General Assembly members may be aware of Plaintiff's existence, there are compelling public policy reasons for the statute's narrowly tailored prohibition.

## II. Plaintiff Must State Whether The Amended Statute Is Facially Unconstitutional Or Unconstitutional As Applied.

There are two ways to challenge a statute's constitutionality. First, a litigant may bring a facial challenge. *United States v. Salerno,* 481 U.S. 739, 745 (1987). In a successful facial challenge, the law is declared "invalid *in toto*" because it is "incapable of any valid application." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). Second, a litigant may bring an as-applied challenge. *See County Court v. Allen,* 442 U.S. 140, 154-55 (1979). In a successful as-applied challenge, the statute is unconstitutional in the circumstance before the court but may be applied constitutionally in other circumstances.

Again, though the exact nature of Plaintiff's challenge is unclear, she may be asking this Court to declare the amendment facially invalid but that the basis for facial invalidity is that the amendment is unconstitutional as applied to a "chill" in being afraid of enforcement. Such a result is constitutionally impossible. Facial invalidity is possible only where there are no circumstances in which the amended statute is constitutional or where the amended statute is substantially overbroad. That an amended statute is unconstitutional in a particular application cannot justify facial invalidity. Plaintiff must clarify whether she intends to invalidate the amended statute facially or as applied. If she intends facial invalidation, she must clarify the basis for the invalidation.

## III. If Plaintiff Believes The Amended Statute is Facially Unconstitutional, She Must State the Basis.

If Plaintiff believes the amended statute is facially unconstitutional, she must state the basis for such an assertion. There are two ways to bring such a challenge. First, in a conventional facial challenge, Plaintiff must demonstrate that "no set of circumstances exists under which the Act would be valid." *Salerno,* 481 U.S. at 745. Second, in some First Amendment contexts, federal courts allow litigants to bring a facial challenge alleging overbreadth. In a successful overbreadth challenge, the law is invalidated in *all* applications because it is invalid in *many* applications. "The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate *all* enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" *Virginia v. Hicks,* 539 U.S. 113, 118-19 (2003) (citations omitted). A facial challenge alleging overbreadth is a way to obtain an advisory opinion regarding all applications of a statute.

Plaintiff's burden and the analytical methodology to be employed by this Court are different for a *Salerno* challenge and an overbreadth challenge. For this reason, Plaintiff must clarify the basis for any facial invalidity.

### IV. If The Basis For Facial Invalidity Is *Salerno*, This Court Should Not Entertain Plaintiff's Challenge.

To the extent Plaintiff brings a facial challenge based on *Salerno*, this Court should decline to entertain it. As the United States Supreme Court recently explained:

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither "'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor "'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'"

*Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1191 (2008) (citations omitted). While "judicial power includes the duty 'to say what the law is,'" *Sanchez-Llamas v. Oregon,* 126 S. Ct. 2669, 2684 (2006), the judiciary must not "frustrate the expressed will of Congress or that of the state legislatures," *Barrows v. Jackson*, 346 U.S. 249, 256-57 (1953), by passing on constitutionality of "hypothetical cases thus imagined." *United States v. Raines*, 362 U.S. 17, 22 (1960).

To succeed if Plaintiff is bringing a *Salerno* challenge to the amended statute's constitutionality, she must "establish that no set of circumstances exists under which the [amended statute] would be valid." *Salerno*, 481 U.S.

at 745. Plaintiffs cannot do so since the amended statute is capable of constitutional application. Section 59.1-443.2 is constitutional as applied to all documents and information apart from public land records.

V.  **If The Basis For Facial Invalidity Is Overbreadth, This Court Should Not Entertain Plaintiff's Claim.**

Facial challenges alleging overbreadth "are fundamentally at odds with the function of the federal courts in our constitutional plan. The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision." *Younger v. Harris,* 401 U.S. 37, 52 (1971).

Facial challenges alleging overbreadth are unavailable if persons not before the court "are sufficiently capable of defending their own interests in court that they will not be significantly 'chilled.'" *Davenport v. Washington Education Ass'n,* 127 S. Ct. 2372, 2383 n.5 (2007). If others subject to the amended statute are capable of vindicating their interest, Plaintiff may not do so.

In this instance, others subject to the amended statute are capable of defending their interests and will not be chilled. Others not part of this litigation are capable of suing in court and challenging the amended statute; therefore, Plaintiff may not bring an overbreadth challenge.

## VI. Plaintiff Cannot Demonstrate Overbreadth.

Even when a statute reaches constitutionally protected speech, "it is not enough for a plaintiff to show 'some' overbreadth." *Reno v. ACLU,* 521 U.S. 844, 896 (1997) (O'Connor, J., joined by Rehnquist, C.J., concurring in part and dissenting in part). Rather, Plaintiff bears the burden of demonstrating "from the text of [the law] and from actual fact" that substantial overbreadth exists. *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988).

Even if this Court determines that the amended statute is substantially overbroad, the statute may be saved by a limiting construction. As the Supreme Court of the United States observed:

> The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," suffices to invalidate *all* enforcement of that law, "until *and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression."*

*Hicks*, 539 U.S. at 118-19 (citations omitted) (first emphasis original; second emphasis added). Before invalidating the democratic process, courts should search for a constitutional, limited interpretation. Courts should hesitate before facially invalidating statutes proscribing speech within the state's power to proscribe. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

Defendant has substantial interest in reducing identity theft and invasion of privacy of citizens. The presence of other means of accomplishing these interests does not make the amended statute overbroad.

**VII. Even If Plaintiff Believes the Amended Statute Is Unconstitutional as Applied, She Fails to Meet the Test for Injunctive Relief.**

Recently, the Supreme Court concluded that invalidation of New Hampshire parental notification law for lack of a health exception was improper. *Ayotte v. Planned Parenthood*, 546 U.S. 320 (2006). The Court held that federal courts should "enjoin only the unconstitutional applications of a statute while leaving other applications in force." *Id.* at 329. The challenged amended statute is capable of constitutional application. Since *Ayotte* limits injunctive relief to identified unconstitutional application, this Court must leave constitutional applications in force. Plaintiff seems to argue that an injunction against enforcement is the typical and logical remedy, as if the amended statute is facially unconstitutional. Again, it is unclear whether Plaintiff finds the amended statute to be unconstitutional on its face or as applied.

The Court must examine the following to determine whether injunctive relief is appropriate: (1) likelihood of irreparable harm to Plaintiff without the injunction and whether Plaintiff has adequate remedy at law; (2) likelihood of harm to Defendant with an injunction; (3) whether Plaintiff is

likely to succeed on the merits and (4) the public interest. *See Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Blackwelder Furniture Co. v. Seilig Mtg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977).

To satisfy the first factor, Plaintiff must demonstrate likelihood of irreparable harm without the injunction. Plaintiff's argument that she will suffer irreparable harm since the amendment will "chill" her website posting is unpersuasive. Indeed, waiting until this late date to file for injunctive relief reveals the lack of an urgency that one reasonably and properly would associate with concern about impending irreparable harm. Risking inability of this Court to accommodate her scheduling demand on such short notice before the amended statute's legally effective date makes clear that any harm that actually could accrue to "chill" her website posting is minimal. In the context of a pre-enforcement as-applied challenge, Plaintiff merely speculates as to the possibility that the amended statute will be enforced against her.

Next, Plaintiff argues that Defendant "will suffer no great harm should an injunction be granted." This ties in with the third and fourth factors, namely, that Plaintiff is unlikely to succeed on the merits because there is no public interest served by an injunction. Most importantly, and at the crux of this case, is that while most of Plaintiff's website is constitutionally protected political speech, there is no public interest in dissemination of individuals' social security numbers online to everyone, everywhere, all the time, worldwide.

It is hard to conceive of a deeper personal privacy invasion. Social security numbers not only are different from other personal identifying information such as names, addresses and phone numbers; they are unique in their sensitivity when it comes to privacy and enabling identity theft. Social security numbers are federal government-originated and issued identifiers. Keeping social security numbers private is a compelling government interest on behalf of citizens.

The amended statute does not prohibit Plaintiff from using public documents effectively for public information and advocacy purposes. To the contrary, Plaintiff may use the documents as a reference to articulate her point, as long as she does not violate privacy rights and enable identity theft by posting individuals' personal social security numbers. There may be a situation where publication of a specific social security number in and of itself could constitute political speech, but Plaintiff herein presents no such basis. While she certainly advocates a message on her website, common sense and good judgment compel the conclusion that her specific inclusion of actual social security numbers, while graphically illustrative of motive, in no way communicates about, and is in conflict with, her professed, preferred public policy. Moreover, the suggestion of willingness to trade back the privacy of those whose social security numbers she has posted in exchange for a certain policy change and General Assembly budgetary funding for her project resembles blackmail and extortion.

Plaintiff argues that she is likely to succeed on the merits because she disseminates information that she culls from public land records, and she implicitly alleges, without specifically attempting to explain how, that a social security number itself is a matter of public concern. Courts properly focus on whether a compelling government interest can overcome a First Amendment right. *See The Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989). Plaintiff's laundry list of cases on page six of her memorandum in support of preliminary injunction correctly abide by the principle that government may not sanction publication of lawfully obtained, truthful information, *as long as it is a matter of public concern*. Certainly, cases involving publication of information regarding the Pentagon papers, judicial disciplinary inquiry and various criminal proceedings all justify First Amendment protection.

However, all of these cases are dissimilar factually from the matter before this Court. This is most evident in *Florida Star*, where the Court noted that the matter of public significance for First Amendment analysis purposes was not the rape victim's name but, rather, the criminal investigation. *Id*. at 536-37. In the *Florida Star* context, Plaintiff herein seems to argue that the social security number itself is an essential matter of public significance that she must disseminate. The flaw in this position is that the social security number itself is not a criminal investigation, which is a matter of public significance. The social security number itself not only is an insufficient public concern, it utterly is without and in conflict with the public concern.

Plaintiff believes *Sheehan v. Gregoire*, 272 F. Supp.2d 1135 (W.D. Wash. 2003) is identical to the case before this Court; however, there are many facts that render it inapposite. Sheehan succeeded in a strictly *facial* challenge alleging that a statute banning publication of a range of information (address, phone number, birth date and social security number), *with intent to harm or intimidate*, was both overbroad and vague.

Sheehan operated a website containing political argument that was critical of police. It stated that it did not intend to provide information for misuse. He wanted the public to be able to locate police so the officers could be served easily with legal process and their homes could be picketed.

Sheehan sought the officers' personal information from a number of sources. He obtained a state court order to access officers' full names under the state Public Disclosure Act. Officers' names, unlike social security numbers, are widely available and released on a regular basis as a necessary incident of everyday police life. They are disclosed routinely. Sheehan then used that information to determine the officers' addresses using the assessor's office. Publication of names, addresses, birth dates and telephone numbers is constitutionally permissible. That information is crucial to reporting.

Like other cases that Plaintiff cites, she fails to accept that Sheehan's communication facilitated the public interest, while her own dissemination of social security numbers serves no public interest. The statute herein merely

prohibits dissemination only of unique, government-issued, personal social security numbers; as such, unlike the broad statute in *Sheehan*, (1) its application is viewpoint-neutral and not selectively dependent on thought-policing of the publisher's subjective intent in disseminating the information so as to silence a particularly hostile speaker or message, (2) there is no exclusive protection from its application afforded to commercial entities and (3) it focuses on a narrowly tailored means to serve the compelling interest of protecting citizens from the actual effect of the speech, invasion of privacy and identity theft.

Social security numbers are not political speech. Dissemination of social security numbers allows individuals and companies to seize assets efficiently and serves *only* to facilitate invasion of personal privacy and identity theft; it is unrelated to *any* governmental operation and does *nothing* to afford greater public scrutiny of government. Social security numbers hold a special position as personal identifiers not normally revealed to the public. Individuals cannot change their social security number in the way they can change their name, address or phone number. Social security numbers are uniquely sensitive. Plaintiff's argument that the public interest is served by finding a constitutional right to disseminate social security numbers because upholding constitutional rights upholds the public interest is, at best, a tautology.

Access to an individual's social security number enables a new holder to obtain access to and control, manipulate or alter other personal information. In *Greidinger v. Davis*, 988 F.2d 1344, 1352-54 (4th Cir. 1993), the Fourth Circuit held that there should be a differentiation on voter registration forms between social security numbers and other personal identifying information such as an individual's name, address, age and place of birth. The Court noted that social security numbers afford the attendant resulting possibility of serious invasion of privacy and that the harm that can be inflicted is alarming and potentially financially ruinous. The Court provided a history of social security numbers, explaining that they originated in 1936, and that they first were intended for use exclusively by the federal government as a means of tracking earnings to determine social security taxes. The Court described that over time, however, they were permitted to be used for purposes unrelated to administration of the social security system, and that after recognizing the dangers of widespread use of social security numbers as universal identifiers and in response to concern over accumulation of personal information, Congress passed the Privacy Act of 1974. The Court then declared in distinguishing social security numbers from other forms of personal information, "Since passage of the Privacy Act, an individual's concern over social security number confidentiality and misuse has become significantly more compelling." *Id.* at 1353.

Privacy is a reflection of the amount of access to personal information and the extent to which others may disseminate it. For most of history, personal privacy existed, with widespread dissemination occurring only when a matter was of public interest. Little information could be accessed through books. As a practical matter, real-life barriers protected publication of personal information except when the information was of public interest. The internet changed this, creating a previously unimaginable situation. Now, there is a pervasive, modern-day means of electronic intrusion into people's personal life with dissemination around the world on the click of a button. This case is at the frontier of internet law, and publication of social security numbers on the internet demands a different analysis. Virginia's ability constitutionally to proscribe dissemination of social security numbers should not be dependent on a long, pernicious history of citizens' fear of being the target of an impending invasion of privacy; rather, the Commonwealth's interest in protecting against the rapid increase in internet-originated identity theft compels application of this narrowly tailored statute. The Virginia legislature consistently, and constitutionally, has protected individual privacy interests by limiting dissemination of social security numbers. In short, the amended statute herein is part of the Commonwealth's direct attempt to proscribe the ability to transact in personally identifying social security numbers.

Significantly, this case could have dramatic implications for another emerging technology and its ability to identify individual, personal, private information – DNA. With genetic profiling on the horizon, this Court should be mindful of the precedent that it will set in this case with its analysis of the public interest of the citizenry against instantaneous, worldwide communication of private, personally unique, identifying information.

**Conclusion**

Plaintiff must clarify the basis for invalidating the amended statute before this Court may determine the scope of injunctive relief. Specifically, she must state whether the amended statute is facially unconstitutional or unconstitutional as applied.

If Plaintiff believes the amended statute is facially unconstitutional, she must state the basis. To the extent she brings a facial challenge based on *Salerno*, this Court should decline to entertain it. In any event, Plaintiff cannot succeed on such a challenge since the amended statute is capable of constitutional application.

If the basis for facial invalidity is overbreadth, Plaintiff may not bring a challenge. In any event, Plaintiff cannot demonstrate overbreadth.

Plaintiff has not met the test for injunctive relief. If, however, this Court believes the amended statute is unconstitutional as applied, injunctive relief must be limited to a specific unconstitutional application.

17

For these reasons, Defendant respectfully requests Plaintiff to clarify its analysis and, in any event, asks this Court to deny Plaintiff's requested relief.

Respectfully submitted,

ROBERT F. MCDONNELL,
Defendant herein


By: _____/s/_____
James V. Ingold, Esq.
Virginia Bar number 31825
Attorney for Robert F. McDonnell
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-3860
Fax: 804-371-2087
JIngold@oag.state.va.us


ROBERT F. MCDONNELL
Attorney General of Virginia

MAUREEN RILEY MATSEN
Deputy Attorney General

PETER R. MESSIT
Senior Assistant Attorney General/Section Chief

JAMES V. INGOLD (VSB No. 31825)
Senior Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia 23219
(804) 786-3860
(804) 371-2087 (FAX)

CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of June, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                By: _____/s/_____
                     James V. Ingold, Esq.
                     Virginia Bar number 31825
                     Attorney for Robert F. McDonnell
                     Office of the Attorney General
                     900 East Main Street
                     Richmond, Virginia 23219
                     Phone: 804-786-3860
                     Fax: 804-371-2087
                     JIngold@oag.state.va.us