IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BETTY J. OSTERGREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 3:08cv362 |
| ROBERT F. McDONNELL, in his official | ) |
| capacity as Attorney General of Virginia, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

The plaintiff, by counsel, replies to Defendant's Response to Plaintiff's Motion for Preliminary Injunction as follows:

I.   THE NATURE OF THIS CONSTITUTIONAL CHALLENGE

The defendant first asserts that it is "unclear" whether this lawsuit challenges Virginia Code § 59.1-443.2 on its face or as applied, although he acknowledges that the Complaint expressly states that the statute is unconstitutional "as applied to public land records." To be clear, the plaintiff does not contend that § 59.1-443.2, prohibiting the dissemination of social security numbers (SSNs), is unconstitutional in all its applications. Rather, the plaintiff contends that the statute is unconstitutional in any application to the dissemination of public records, including those posted on plaintiff's website.

Further, while the plaintiff challenges the statute's application to any dissemination of public records, a preliminary injunction is sought only for enforcement

of the statute against the plaintiff. Thus, for the purpose of this motion, the Court need only consider the statute as applied to the plaintiff's website.

II.   IRREPARABLE HARM

In the absence of preliminary relief, the plaintiff will "be left with the Hobson's choice of self-censorship . . . or subjecting themselves to [sanction]. . . . The injury of having to make such a decision would be immediate and irreparable." *PSINet, Inc. v. Chapman*, 108 F.Supp.2d 611, 622 (W.D. Va. 2000) (granting preliminary injunction). The defendant says that Ms. Ostergren's fears that the statute will be enforced against her "speculative," but plaintiffs are not required to prove with certainty that an unconstitutional statute will be enforced against them in order to obtain a preliminary injunction. "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Bronx Household of Faith v. Board of Educ. of City of New York*, 331 F.3d 342, 349 (2nd Cir. 2003). *See also PSINet*, 108 F.Supp.2d at 619 (internal quotation marks and citation omitted); ("In the context of threats to the right of free expression, it is not necessary that an individual first be exposed to prosecution in order to have standing to challenge a statute which is claimed to deter the exercise of constitutional rights"); *Virginia Soc. for Human Life, Inc. v. Caldwell*, 906 F.Supp. 1071, 1077 (W.D. Va. 1995) (citation omitted) ("When an individual's free speech rights are infringed, irreparable harm is generally inflicted. . . . In this case, the chilling effect of a broad reading of the challenged provisions is clear, and constitutes irreparable harm.")[1]

---

[1] The defendant's only other argument against plaintiff's assertion of irreparable harm is that she did not file her lawsuit until shortly before the statute was to go into effect. As plaintiff's counsel explained in a conference call with the Court, the filing date was due to counsel's concern that filing too earlier would

2

III.   THE MERITS

The gravamen of plaintiff's argument against the statute is that "the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975). But the defendant simply does not address this argument. Without disputing that Virginia circuit court clerks make millions of documents containing SSNs available on line, the government fails to explain how it can hold Ms. Ostergren liable for doing the same thing on a much, much smaller scale.

Instead, the government's strategy for defending § 59.1-443.2 is first to dwell on the importance of keeping SSNs private. But the government's protestations about its interest in protecting SSNs ring hollow given that it will be making all land records accessible on line by July 1 of this year. While the defendant assembles an impressive looking list of statutes meant to protect SSNs (Def's Resp. at 3), not one of those statutes prevents this vast collection of documents with SSNs from being viewed by anyone in the world with a computer.

Next, the defendant claims that the SSNs on the documents posted on Ms. Ostergren's site have no communicative value. To the contrary, much of the rhetorical force of Ms. Ostergren's advocacy comes from displaying the documents *exactly* as they appear through government websites. The shock value of the numbers themselves underlines the her message that making these documents available on a huge scale is truly dangerous. A simple analogy demonstrates this point: If Ms. Ostergren posted clips of

---

result in ripeness issues. This calculation may have been incorrect, but it certainly does not diminish the injury to Ms. Ostergren's freedom of speech once the statute does become effective.

movies on her website to demonstrate the prevalence of vulgar language in the media, the message would be greatly diminished if all of the obscene words were "bleeped" out. Similarly, in countering the government's practice of making millions of documents containing SSNs available online, the numbers themselves are essential to the message.[2]

The defendant cites *The Florida Star v. B.J.F.* 491 U.S. 524, 541 (1989), in support of its argument that it can compel the plaintiff to censor SSNs from the public records she posts because the numbers are allegedly not, in and of themselves, of "public concern." But *The Florida Star* actually proves the opposite. As the defendant correctly states, the Court "noted that the matter of public significance for First Amendment analysis purposes was not the rape victim's name but, rather, the criminal investigation." (Def's Resp. at 12.) But even though the name itself was of limited public concern, the newspaper could not be sanctioned for including it in an article that *was* of public concern. The newspaper could not be required to take the name out of its article, and Ms. Ostergren cannot be required to take the SSNs out of the documents posted on her website.

Finally, the defendant unsuccessfully attempts to distinguish *Sheehan v. Gregoire*, 272 F. Supp.2d 1135 (W.D. Wash. 2003). First, he claims that "[o]fficers' names, unlike social security numbers, are widely available" and "are disclosed routinely." (Def.'s Resp. at 13.) But in Virginia, documents containing SSNs are just as widely available, from circuit court clerks' websites. The defendant further asserts that "[p]ublication of

---

[2] The defendant also claims that the inclusion of SSNs is "in conflict with [plaintiff's] professed, preferred public policy," and that her supposed "willingness to trade back the privacy of those whose social security numbers she has posted in exchange for a certain policy change and General Assembly budgetary funding for her project resembles blackmail and extortion." (Def.'s Resp. at 11.) This attack is utterly unwarranted. Ms. Ostergren is not "trading back" anyone's privacy; she is not disclosing any information that is not already disclosed by the government itself. Nor is she seeking funding for any "project" of "hers"; she simply would like the government to cease making SSNs available on line.

4

names, addresses, birth dates and telephone numbers is constitutionally permissible" and "crucial to reporting." *Id.* But he ignores the fact that the *Sheehan* plaintiff also posted the SSNs of police officers, which was also prohibited by the challenged statute. 272 F. Supp.2d at 1139. Surely, the *Sheehan* court could have preserved the prohibition on publishing SSNs, while striking down the prohibition on publishing names, addresses, and phone numbers, but it did not. Relying on cases such as *The Florida Star*, it invalidated the statute in its entirety.

## CONCLUSION

For the foregoing reasons the plaintiff respectfully requests that the Court issue a preliminary injunction prohibiting the enforcement of Virginia Code § 59.1-443.2 against her.

Respectfully submitted,

BETTY J. OSTERGREN

By:

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union of Virginia
    Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 (FAX)
rglenberg@acluva.org

Frank M. Feibelman VSB #13877
Cooperating Attorney for the ACLU of Virginia
5206 Markel Rd., Suite 102
Richmond, Virginia 23230
(804) 355-1300
FAX: (804) 355-4684

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

>James V. Ingold
>Office of the Attorney General
>900 E. Main Street
>Richmond, Virginia 23219
>JIngold@oag.state.va.us

/s/
Rebecca K. Glenberg
