IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BETTY J. OSTERGREN,
    Plaintiff,

v.                        Civil Action No. 3:08cv362

ROBERT F. MCDONNELL,
    Defendant.

**DEFENDANT'S BRIEF ON STANDING/COHEN v. COWLES MEDIA**

COMES NOW Defendant, Robert F. McDonnell ("Defendant"), by counsel, in response to the Orders of this Court, stating as follows:

**INTRODUCTION**

Defendant agrees that a litigant who faces a credible threat of prosecution may bring a pre-enforcement, as-applied challenge to a criminal statute; however, Plaintiff does not face such a threat. Also, any standing Plaintiff may enjoy to mount a pre-enforcement challenge to Section 59.1-443.2 applies only with respect to Plaintiff's conduct involving her website's display of unredacted social security numbers that she obtains from public land records through Virginia's secure remote access system and not to other conduct, including that of third parties.

Defendant disagrees with two assumptions in Plaintiff's brief. First, Plaintiff's initial footnote alleges, "Although the challenged statute in this case imposes civil, rather than criminal sanctions, the principle is the same." She offers no legal basis for this assertion, which is in conflict with the admonition distinguishing challenges to criminal statutes set forth in *Kemler v. Poston*, 108 F. Supp. 2d 529, 538 (E.D. Va. 2000) (Payne,

J.). "Important in the context of this action is that, although the threat of criminal penalty militates in favor of a finding of hardship, see *Navegar, Inc. v. United States*, 103 F.3d 994, 999-1002 (D.C. Cir. 1997), threat of civil enforcement is considered a hardship that generally does not call for judicial intervention. *See Lee v. Oregon*, 107 F.3d 1382, 1391-92 (9th Cir.), *cert. denied*, 522 U.S. 927, 118 S. Ct. 328, 139 L. Ed. 2d 254 (1997)." *Id*. at 542. Likewise, in *Falwell v. City of Lynchburg, Virginia*, 198 F. Supp. 2d 765 (W.D. Va. 2002), the Court noted in footnote nine, "This case differs from *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 795, 710 (4th Cir. 1999), in which a plaintiff who faced 'a credible threat of prosecution under a criminal statute' had standing to mount 'a pre-enforcement challenge to that statute.' In this case, the Plaintiffs face no credible threat of prosecution, because the challenged provisions, Va. Code Ann. §§ 57-12, 57-15, and Article IV, § 14(20), are not criminal."

Second, again with no support whatsoever, she declares in page four of her brief that the standing analysis is the same "regardless of whether the challenge is facial or as-applied." Despite the fact that this case is an as-applied challenge only to Section 59.1-443.2's application to Plaintiff's website and not to other conduct, including that of third parties, she then proceeds to cite cases involving *facial* challenges that alleged unconstitutional overbreadth and vagueness, all of which were case specific, to bolster her argument in this case.

In addition, Defendant challenges justiciability of the dispute in the Complaint. The doctrine of justiciability "implicates not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention in the dispute presented by the claim." *Kemler at* 534 (citing *Regional Rail Reorganization Act Cases*,

419 U.S. 102, 136-48 (1974)). "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so. [The Supreme Court] presume[s] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991). A case is nonjusticiable if (1) the plaintiffs lack standing, *see, e.g*, *Warth v. Seldin*, 422 U.S. 490, 498 (1975), (2) if the issues they raise are not ripe for review or (3) are moot, *see, e.g.*, *Renne*, 501 U.S. at 320-23. The present case is nonjusticiable for the first two reasons. Plaintiff bears the burden of demonstrating that jurisdiction exists. *See Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Substantively, Defendant asserts that *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) may be applied harmoniously with *The Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989), *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979) and *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) ("the *Cox* line"). Plaintiff has not articulated how application of the statute affects protected speech; nevertheless, even if Plaintiff somehow were able to demonstrate that individual social security numbers, in and of themselves, are matters of public concern, case law and scholarly publications lead to the conclusion that a balancing of privacy interests against the First Amendment, given the facts of this case, weigh in favor of denying Plaintiff's requested relief.

**ARGUMENT**

**I. PLAINTIFF LACKS STANDING TO CHALLENGE § 59.1-443.2**

Article III does not grant the federal judiciary "unconditioned authority to determine the constitutionality of legislative or executive acts," *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471

3

(1982), but limits that authority to resolution of "cases" and "controversies," *see id.* (citations omitted). "As an incident to the elaboration of this bedrock requirement," the Supreme Court requires that a litigant have "standing" to challenge the act of which she complains. *Id.* at 471.

The party invoking jurisdiction bears the burden of establishing standing. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. "[A]t an irreducible minimum," the doctrine requires

> the party who invokes the court's authority to show that *he personally has suffered some actual or threatened injury* as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

*Valley Forge*, 454 U.S. at 472 (internal quotation marks and citations omitted) (emphasis added). To have standing, a complainant must demonstrate that she has suffered an actual or threatened injury. *Id*.

The Plaintiff has not suffered an actual or threatened injury that constitutes an "injury in fact." An injury in fact is the invasion of a legally protected interest that is (1) concrete, demonstrable and particularized and (2) actual or imminent, as opposed to merely conjectural or hypothetical. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury in fact requirement assures "that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge*, 454 U.S. at 472 (citations omitted). Thus,

the complainant must allege an injury to herself that is "distinct and palpable," *Meese v. Keene*, 481 U.S. 465 (1987), as opposed to merely "[a]bstract," *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Plaintiff must "clearly and specifically" identify facts to satisfy the injury in fact requirement, and "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas,* 495 U.S. 149, 155-56 (1990) (citing *Warth*, 422 U.S. at 508, 518).

Even in the First Amendment context, standing limitations remain operative. Allegation of a subjective "chill" that arises "merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruit of those activities, the agency might in the future take some other and additional action detrimental to that individual" is not sufficient to establish standing. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Rather, the Plaintiff still must show a "specific present objective harm or a threat of specific future harm." *Id.* at 14. There is no record of an actual or imminent application of Section 59.1-443.2 or a credible threat of its enforcement that is sufficient to present a constitutional issue in clean-cut, concrete form. In short, Plaintiff fails to demonstrate a live dispute involving actual or threatened application of the statute to bar protected speech and does not satisfy the standing requirement of Article III. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298 (1979). Thus, it is important to reaffirm and emphasize "the established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as a result of the action. . . ." *Laird,* 408 U.S. at 13 (*quoting Ex parte Levitt*, 302 U.S. 633, 634,(1937)).

In *Kemler,* though Plaintiffs claimed they were "chilled" by concern for consequences of an act, there was no indication disciplinary action would be taken against them, and the court ruled the claim of injury was too remote to establish a specific threat of future harm. 108 F. Supp. 2d at 538-39. Additionally, even in the criminal context, the threat of enforcement of a statute does not arise simply because the ordinance can be read in a way that would allow prosecution. *See Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986) (reviewing ordinance that prohibited fornication and cohabitation and holding the absence of prosecution established plaintiffs should have no "fear of prosecution except those that are imaginary and speculative"). *Duling* held the plaintiffs did not have standing to challenge the constitutionality of the ordinance where there was no evidence the plaintiffs had been threatened under the statute. *Id*. at 1206-1207.

Similarly, Plaintiff herein cannot demonstrate an injury in fact. Standing alone, Section 59.1-443.2, which Plaintiff admits merely imposes a small civil penalty, poses no actual or threatened imminent injury to Plaintiff and, consequently, cannot be invalidated. Notwithstanding her deficient, conclusory statements in this regard, she cannot create, artificially and subjectively, the required injury in fact. There is no concrete threat of imminent criminal. The "chill" felt by Plaintiff herein is speculative.

## II. PLAINTIFF'S CLAIM IS NOT RIPE FOR ADJUDICATION

In addition to challenging Plaintiff's standing before the Court, the Defendant argues Plaintiff's claim is not ripe. Plaintiff herein seeks resolution of an abstract and hypothetical "dispute." The underlying principle of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) (quoted in *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983)). Inquiry into ripeness involves two questions - (1) Is the issue fit for judicial review, and (2) if consideration of the issue is withheld, will hardship fall on the Plaintiff? *Virginia Soc'y for Human Life v. Fed. Election Comm.*, 263 F.3d 379, 390 (4th Cir. 2001) (quoting *Abbott Labs.*, 387 U.S. at 148-149). Plaintiff has not met this test.

The requirement of fitness furthers the court's interest in "avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Kemler*, 108 F. Supp. 2d at 540 (quoting *Regional Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (citation omitted). In addition, to warrant judicial intervention under the hardship prong of the ripeness analysis, the harm to Plaintiff of deferring review must outweigh the benefit of deferral to this Court and the Defendant. *Id.* at 542. *See West Virginia Highlands Conservancy, Inc. v. Babbitt*, 161 F.3d 797, 801 (4th Cir. 1998) (*quoting Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 918 (D.C. Cir. 1985)). Whether Plaintiff's complaint is sufficiently serious to warrant immediate review depends on the totality of the circumstances. *Id*. For "deferral to be outweighed, postponing review must impose a hardship on the [plaintiff] that is immediate, direct, and significant." *Id*. This Court is without a concrete record on which to analyze Plaintiff's claim. Plaintiff may not legitimately allege, under the totality of the circumstances, that her protected speech has been "chilled" in an "immediate, direct and significant" way. Thus, she fails to satisfy the ripeness analysis.

## III. COHEN v. COWLES MEDIA CO.

The amended statute is a content-neutral law that does not target a viewpoint or person but, rather, is applicable generally to all. Justice White analyzed laws of general applicability in *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), noting, "We granted certiorari to consider the First Amendment implications of this case." *Id.* at 667. Justice White went out of his way, two terms after *Florida Star*, to explain in *Cohen* that, like the Plaintiff before this Court, "Respondents rely on the proposition that, 'if a newspaper lawfully obtains truthful information about a matter of public significance, then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.'" *Id.* at 668-669 (quoting *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979)). Justice White observed that this quote "has been applied in various cases" and served as the basis for *Florida Star*. *Id.* at 669.

Justice White continued, "This case, however, is not controlled by this line of cases but rather by the equally well-established line of decisions holding that generally applicable laws do not offend the First Amendment...." *Id*. Plaintiff herein has no special immunity from application of general laws. She "has no special privilege to invade the rights and liberties of others." *Id.* at 670 (quoting *Associated Press v. NLRB*, 301 U.S. 103 (1937)). Justice White noted that the traditional First Amendment strict scrutiny standard does not control analysis of such cases. Distinguishing *Florida Star*, Justice White concluded by asserting that the First Amendment does not grant automatic protection from a law "which in any fashion or to any degree limits or restricts" a right to report truthful information, *Id.* at 671, and that the consequence of application of generally applicable law is "incidental, and constitutionally insignificant." *Id.* at 672.

It is important to note that *Cohen*, like the matter before this Court, involved only civil damages, which it ruled were not punishment. Interestingly, the damages at issue in *Cohen* far exceeded the amount of the penalty set forth in the amended statute herein.

One scholar explores the history of tension between privacy and the First Amendment, noting that "privacy and speech have coexisted harmoniously…." Neil M. Richards, Note, *Reconciling Data Privacy and the First Amendment*, 52 UCLA L. Rev. 1149, 1199-1200 (2005). He explicitly challenges the critique, celebrated by Plaintiff herein, that privacy rules restricting dissemination of truthful information automatically violate the First Amendment. He points out that the Supreme Court repeatedly made clear that (1) the *Cox* line rulings were narrow (2) it declined to address whether truthful publication ever may be punished consistent with the First Amendment and (3) the *Cox* line involved media publishing newsworthy factual information. *Id*. Richards suggests that courts develop a category of speech that is private, or at least not a matter of public concern, and that such a theory has support in First Amendment doctrine. *Id*.

Defendant asks this Court to consider Justice Powell's opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749 (1985) as instructive to the pending case. *Dun & Bradstreet* held that credit reports, available to subscribers who could not disseminate it, concerned "no public issue." *Id*. at 762. Likewise, Plaintiff herein admittedly agrees to gain access to unredacted social security numbers by subscribing to Virginia's secure remote access system, and if there is unauthorized use of information, circuit court clerks have authority to terminate the subscriber agreement. Plaintiff cannot argue credibly that these social security numbers are protected speech of a nature that constitutes a more legitimate public concern than the *Dun & Bradstreet* credit reports.

Numerous scholars have commented on *Cohen* and how courts may apply it harmoniously with the *Cox* line. The *Cohen* decision, of course, did not have the First Amendment as a counterweight and found the *Cox* line inapplicable. Strikingly, the *Cohen* opinion was issued despite the fact that it arose in the context of a political news story.

Some commentators argue that once Plaintiffs demonstrate the necessary, predicate, threshold requirement that information they seek to publish is a matter of public significance, courts then should reconcile the tension on an ad hoc basis and balance the state's interest in inhibiting publication with the public interest in receiving the information. See Matthew J. Coleman, Note, *The "Ultimate Question": A Limited Argument for Trafficking in Stolen Speech*, 55 Okla. L. Rev. 559, 598 (2002); Stephen M. Stern, Note, *Witch Hunt or Protected Speech: Striking a First Amendment Balance Between Newsgathering and General Laws*, 37 Washburn L.J. 115, 146 (1997); Jeffrey A. Richards, Note, *Confidentially Speaking: Protecting the Press from Liability for Broken Confidentiality Promises*, 67 Wash. L. Rev. 501, 511 (1992). Had the Court in *Cohen* undertaken such balancing, given the political context of the facts in that news story, that Plaintiff arguably could have prevailed.

Defendant herein argues that *Cohen* controls disposition of the case before this Court, yet even if Plaintiff somehow were able to demonstrate that individual social security numbers, in and of themselves, are matters of public concern, ad hoc balancing of privacy interests against the First Amendment, given the facts of this case, weighs in favor of denying Plaintiff's requested relief. "[T]here have been, and will continue to be, unfortunate consequences that come about as a result of the information age, and the

invasion of privacy is near, if not at, the top of the list. *In some instances, it will be possible to classify such invasions as categorically wrong, for instance, when they facilitate credit card or identity theft*." Coleman, *supra*, at 611 (emphasis added). Dissemination of an individual's social security number serves no public interest, and it is not the type of important political information that the public has a right to receive.

## CONCLUSION

Section 59.1-443.2, *Code of Virginia* (1950, as amended) is constitutional. Defendant asks this Court to deny Plaintiff's requested relief.

> Respectfully submitted,
> ROBERT F. MCDONNELL,
> Defendant herein
>
> By: _____/s/_____
> James V. Ingold, Esq.
> Virginia Bar number 31825
> Attorney for Robert F. McDonnell
> Office of the Attorney General
> 900 East Main Street
> Richmond, Virginia 23219
> Phone: 804-786-3860
> Fax: 804-371-2087
> JIngold@oag.state.va.us

ROBERT F. MCDONNELL
Attorney General of Virginia

MAUREEN RILEY MATSEN
Deputy Attorney General

JAMES V. INGOLD (VSB No. 31825)
Senior Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia 23219
(804) 786-3860
(804) 371-2087 (FAX)

CERTIFICATE OF SERVICE

      I hereby certify that on this 1st day of August, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

>By: _____/s/_____
>James V. Ingold, Esq.
>Virginia Bar number 31825
>Attorney for Robert F. McDonnell
>Office of the Attorney General
>900 East Main Street
>Richmond, Virginia 23219
>Phone: 804-786-3860
>Fax: 804-371-2087
>
>JIngold@oag.state.va.us