```
                    IN THE UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF VIRGINIA
                               Richmond Division
```

| | |
|---|---|
| BETTY J. OSTERGREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 3:08cv362 |
| ROBERT F. McDONNELL, in his official | ) |
| capacity as Attorney General of Virginia, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S REPLY BRIEF ON THE ISSUES
OF STANDING AND COHEN v. COWLES MEDIA**

Plaintiff Betty J. Ostergren, by counsel, replies to Defendant's Brief on Standing/Cohen v. Cowles Media as follows:

I.    PLAINTIFF HAS STANDING

Absent relief from this Court, Ms. Ostergren faces the unacceptable quandary of having to remove material from her website or face severe penalties. This constitutes an immediate injury to her freedom of speech.

The defendant contends that Ms. Ostergren's injury is not cognizable because she faces civil, rather than criminal penalties. There is simply no logic to this position. If the challenged statute is enforced against her, Ms. Ostergren could be subject to a fine of $2500, plus $1000 in costs, for each of the twenty or so public records posted on her website. Va. Code § 59.1-206. This amounts to about $70,000, plus attorney's fees. The defendant may consider this a "small" penalty (Def.'s Br. at 6), but the plaintiff most assuredly does not. It certainly is sufficient to drive a person of ordinary means to self-censorship.

Courts have not hesitated to entertain challenges to civil enforcement provisions that chill free speech. *See*, *e.g.*, *Edenfield v. Fane*, 507 U.S. 761 (1993) (challenge to regulation of accountants); *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979) (challenge to attorney disciplinary rule); *Allen, Allen, Allen & Allen v. Williams*, 254 F.Supp.2d 614 (E.D. Va. 2003) (same). This Court's decision in *Kemler v. Poston*, 108 F. Supp. 529 (E.D. Va. 2000), in which substitute judges challenged an opinion of the Judicial Ethics Advisory Committee (JEAC), is not to the contrary. Although the Court did observe that the case involved a challenge to a civil, rather than criminal regulation, the real deficiency was that the plaintiffs had "not adequately established that the state administrative structure which they seek to enjoin compels them to do, or to refrain from doing, anything," because JEAC's opinion was only advisory, and the agency with actual enforcement power against judges were not bound by it. 108 F. Supp. at 538. The Court also listed a "multitude of contingencies" that would have to occur before any enforcement against the plaintiffs could take place.

The present case is very different from *Kemler*. Rather than a nonbinding opinion that may at some future date provide the basis for disciplinary action, the present case challenges a binding statute, currently in force, that directly prohibits the plaintiff's speech. The defendant himself has opined that the plaintiff's activities violate the statute, and has not disclaimed any intention of enforcing it against her. There are no "contingencies" standing between the plaintiff and tens of thousands of dollars in fees – only the defendant's decision to enforce the statute.

For similar reasons, this case cannot be compared to *Laird v. Tatum*, 408 U.S. 1 (1972). That case did not involve a statute that directly prohibited speech. Rather, the

plaintiffs challenged the Army's practice of surveillance of groups involved in lawful, constitutionally protected activity. The knowledge that such surveillance was taking place, the plaintiffs argued, chilled their freedom of speech. The Court distinguished that situation from previous cases, in which it had allowed standing based on a "chilling effect":

> In none of these cases . . . did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.

408 U.S. at 11. In the present case, unlike *Laird*, the chill to the plaintiff's free speech arises from a proscription of speech in which she is currently engaged. This is not the "subjective chill" of *Laird*, but a reasonable fear that a statute prohibiting her activity will be enforced against her.

Finally, the defendant asserts that the plaintiff may not raise an as-applied challenge, but fails to explain the logic of this position. Nor has the defendant explained why the Supreme Court has allowed such challenges in cases like *Edenfield v. Fane* and *Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 127 S.Ct. 2652 (2007), if they are prohibited by the rules of standing.

II.     THIS ACTION IS RIPE FOR REVIEW

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). In the present case, there are no future contingencies. All the facts are known about the nature of plaintiff's speech. "The only

3

issue in the case is whether Virginia's . . . law violates the plaintiff['s] First Amendment rights to [free speech], which presents a purely legal question." *Id.* Moreover, as explained at length in plaintiff's previous brief, the injury to the plaintiff is concrete and immediate: She must cease her expressive activities or face onerous enforcement action. In First Amendment cases, plaintiffs are not required to sit on their hands and wait for action to be taken against them before they may challenge a statute restricting speech.

III.  *COX BROADCASTING*, NOT *COHEN v. COWLES MEDIA*, CONTROLS THIS CASE.

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975) established a simple and logically compelling principle: "[T]he First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records."  That principle, which has been reaffirmed in cases like *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) and *Smith v. Daily Mail*, 443 U.S. 97 (1979), applies directly to the present case.  Ms. Ostergren takes records that have been deliberately made public and available on line by various government agencies, and posts them on her own website.  The First Amendment does not allow her to be punished for doing so.

*Cohen v. Cowles Media Company*, 501 U.S. 663 (1991) is a very different case. In *Cohen*, a newspaper obtained information from a private source, and promised the source not to publish his name.  When the newspaper violated that promise, the Court held that the source could maintain a promissory estoppel cause of action against the newspaper.

4

There are at least three essential factors that distinguish *Cohen* from both *Cox Broadcasting* and its progeny and the present case. First, in *Cohen*, the prohibition on publication arose from an agreement between two private individuals:

> In [*Florida Star v. B.J.F.* and *Smith v. Daily Mail*], the State itself defined the content of publications that would trigger liability. Here, by contrast, Minnesota law simply requires those making promises to keep them. The parties themselves . . . determine the cope of their legal obligations, and any restrictions that may be placed on the truthful information are self-imposed.

*Cohen*, 501 U.S. at 670-71. In the present case, as in *Cox*, *Florida Star*, and *Daily Mail*, the government, not a private agreement, is prohibiting the plaintiff from posting public records containing social security numbers.

Second, in *Cohen*, the published information was not openly available to the public, but was obtained through potentially unlawful deceit and misrepresentation:

> [I]t is not at all clear that respondents obtained Cohen's name "lawfully" in this case, at least for the purposes of publishing it. Unlike the situation in *Florida Star*, where the rape victim's name was obtained through lawful access to a police report, respondents obtained Cohen's name only by making a promise that they did not honor.

*Id.* at 671. In this case, of course, the plaintiff has published only information made directly available to her by the government.

Third, in *Cox*, *Florida Star*, *Daily Mail*, and this case, the laws at issue directly targeted speech by making it unlawful to publish certain information. In *Cohen*, the promissory estoppel law was not about speech, but about promises. The effect that the law had on speech was "no more than the incidental, and constitutionally insignificant, consequence of applying to the press a generally applicable law that requires those who make certain kinds of promises to keep them." *Id.* at 672.

The defendant claims that the statute challenged here is, like the promissory estoppel law at issue in *Cohen*, is one of "general applicability." But the defendant misunderstands the expression, which is a "term of art [that] has been classically reserved in First Amendment jurisprudence for laws that actually do not regulate speech at all." Rodney A. Smolla, "Information as Contraband: The First Amendment and Liability for Trafficking in Speech," 96 Nw. U. L. Rev. 1099, 1119 (2002). The Virginia statute directly regulates speech by prohibiting the publication of certain information.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in her previous briefs, the plaintiff respectfully requests the Court to hold that (1) the plaintiff has standing, and (2) Va. Code § 59.1-443.2 is unconstitutional as applied to her.


Respectfully submitted,

BETTY J. OSTERGREN

By:

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union of Virginia
    Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 (FAX)
rglenberg@acluva.org

Frank M. Feibelman VSB #13877
Cooperating Attorney for the ACLU of Virginia
5206 Markel Rd., Suite 102
Richmond, Virginia 23230
(804) 355-1300
FAX: (804) 355-4684

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

> James V. Ingold
> Office of the Attorney General
> 900 E. Main Street
> Richmond, Virginia 23219
> JIngold@oag.state.va.us


      /s/
Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union of Virginia
      Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 (FAX)
rglenberg@acluva.org