IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

BETTY J. OSTERGREN,                    )
                                        )
        Plaintiff,           )
                                        )
v.                                      )
                                        )  Civil No. 3:08cv362
ROBERT F. McDONNELL, in his official    )
capacity as Attorney General of Virginia, )
                                        )
        Defendant.           )
                                        )

## PLAINTIFF'S BRIEF ON INJUNCTIVE RELIEF

Pursuant to the Court's Order and Memorandum Opinion of August 22, 2008, the plaintiff, by counsel, submits this brief as to "the propriety and scope of an injunction other than with respect to Ostergren's website as it exists." (Mem. Op. at 33.)

In the plaintiff's view, the First Amendment requires the Court to issue an injunction prohibiting any enforcement of Virginia Code § 59.1-443.2 against the Ms. Ostergren for the posting of any public records on her website, now or in the future.

I.    THE LOGIC OF THE COURT'S OPINION APPLIES EQUALLY TO PUBLIC RECORDS CURRENTLY POSTED ON MS. OSTERGREN'S WEBSITE AND RECORDS THAT MAY BE POSTED IN THE FUTURE.

This Court correctly found that this case is controlled by *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), and its progeny, which rejected the notion that a speaker could be punished for re-publishing records that the government itself had placed in the public domain. Carefully applying those cases to the facts of this one, the Court concluded that Virginia Code § 59.1-443.2 is unconstitutional as applied to public records currently posted on Ms. Ostergren's website. (Mem. Op. at 33.)

Every step of the Court's reasoning applies as much to any public record Ms. Ostergren might post tomorrow as it does to those already posted. Specifically:

- Ms. Ostergren's website must be afforded the same First Amendment protections as the traditional press, her site being "an archetypal instance of the press informing the public of government operations through government records. . ." (Mem. Op. at 24)
- The records posted on Ms. Ostergren's site are all obtained from government sources and are "closely akin" to those at issue in *Cox Broadcasting*. (*Id.*)
- The State has not treated the protection of social security numbers (SSNs) as an "interest of the highest order"; instead, it has required public records to be made available on line without providing funding for their redaction.(*Id.* at 25-28)
- It was within the State's power to prevent the release of private information without impinging on Ms. Ostergren's free speech rights (*Id.* at 27)
- The speech on Ms. Ostergren's website is on a matter of public concern, and the Court may not "parse political speech in assessing whether it is constitutionally permissible to regulate that speech." (*Id.* at 28-29)
- Ms. Ostergren is not "stripping social security numbers from records and publishing them in list form," but publishing "public records in their unredacted entirety." (*Id.* at 30).

This analysis simply does not allow for any distinction between public records that are posted on Ms. Ostergren's website today and those that may be posted there in the future. Regardless of when Ms. Ostergren might post them, they are public records,

made available on line by the government itself, being used by the Ms. Ostergren to address a topic of public concern.

Freezing Ms. Ostergren's website in time will effectively end her ability to advocate against the online availability of public records in her uniquely effective way. It has been her practice, when she learns of a new government website that posts records including SSNs, to post one or several examples from that website on her own site. In a number of cases, government entities have responded by redacting SSNs from public records available on line or removing such records from the websites altogether. (Ostergren Decl. ¶ 6.) If Ms. Ostergren is not allowed to add new public records to her website, she will be shut out from advocacy in new jurisdictions.

"[T]he nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation." *Missouri v. Jenkins*, 515 U.S. 70 (1995) (quoting *Milliken v. Bradley*, 433 U.S. 267 (1977). Under line of reasoning set forth in the Court's opinion, Virginia Code § 59.1-443.2 may not be constitutionally applied to the posting of any public records on Ms. Ostergren's website, and the Court's injunction, therefore, should not allow any such application of the statute.

II. ANY PERCEPTION OF HARM CAUSED BY MS. OSTERGREN'S WEBSITE IS NOT SUPPORTED BY THE RECORD AND DOES NOT JUSTIFY A LIMITATION ON INJUNCTIVE RELIEF.

The Court may be reluctant to grant Ms. Ostergren the full relief she requests due to a perception that her website contributes to the problem of identity theft. There is no evidence in the record to support such a perception. Even if the Court were to assume that the website could be used by identity thieves, there is certainly no evidence that it

poses a danger that is at all significant compared to that posed by the government websites against which she protests.[1]

Moreover, even if the twenty or so public records posted on Ms. Ostergren's website contributed significantly to identity theft, this fact would not diminish her First Amendment right to publish information that the government has already made public. As the Court is aware, the rape victim in *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989) suffered greatly as a result of the newspaper article disclosing her name. She "received harassing phone calls, required mental health counseling, was forced to move from her home, and was even threatened with being raped again." 491 U.S. at 542-43 (White, J., dissenting). But the Court recognized that the onus for protecting private information in the government's custody must rest on the government itself, and not on third-party speakers who lawfully obtain that information. "[W]here the government itself provides information to the media, it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech." *Id.* at 538.

The nature of the First Amendment is such that courts are sometimes placed in the difficult position of protecting speech that they would rather not allow. As Justice Kennedy observed, in striking down a flag-burning statute:

> The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result. And so great is our commitment to the process

---

[1] It is important to note that Ms. Ostergren posts public records not only from Virginia government websites, but from the government websites of other states. *See* Stipulation ¶¶ 3,6; Ostergren Decl. ¶¶ 3,6. While Virginia's "secure remote access" system offers the minimal – one might even say cosmetic – protections of requiring registration and a nominal fee, government websites in other states may provide even less protection. *See*, *e.g.*, http://www.miami-dadeclerk.com/publicrecords.

that, except in the rare case, we do not pause to express distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases.

*Texas v. Johnson*, 491 U.S. 397, 420-21 (1989).

Undoubtedly, the difficulty is exacerbated when the court considers the speech at issue to be not only distasteful, but harmful. In *ACLU v. Gonzales*, 478 F.Supp.2d 775 (E.D. Pa. 2007) (*aff'd sub nom ACLU v. Mukasey*, 534 F.3d 181 (3rd Cir. 2008)), the court poignantly expressed its dismay at having to invalidate the Child Online Protection Act, which was meant to protect children from material deemed "harmful to minors" on the Internet:

> I agree with Congress that its goal of protecting children from sexually explicit materials on the Web deemed harmful to them is especially crucial. This court, along with a broad spectrum of the population across the country yearn for a solution which would protect children from such material with 100 percent effectiveness. However, I am acutely aware of my charge under the law to uphold the principles found in our nation's Constitution and their enforcement throughout the years by the Supreme Court. I may not turn a blind eye to the law in order to attempt to satisfy my urge to protect this nation's youth by upholding a flawed statute, *especially when a more effective and less restrictive alternative is readily available*. . . .

47 F. Supp. at 820 (emphasis added). The court therefore permanently enjoined the Attorney General "from enforcing or prosecuting matters premised upon [COPA] at any time for any conduct." *Id.*

## CONCLUSION

The case law and this Court's reasoning in its Memorandum Opinion compel the conclusion that Virginia Code § 59.1-443.2 is unconstitutional as applied to any public record posted on the plaintiff's website. There is no basis for limiting injunctive relief to the website as it currently exists. Accordingly, the plaintiff respectfully requests that the

Court issue a permanent injunction prohibiting the enforcement of the statute against her for the posting of any public records on her website.

Respectfully submitted,

BETTY J. OSTERGREN

By:

_____/s/_____
Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union of Virginia
    Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 (FAX)
rglenberg@acluva.org

Frank M. Feibelman VSB #13877
Cooperating Attorney for the ACLU of Virginia
5206 Markel Rd., Suite 102
Richmond, Virginia 23230
(804) 355-1300
FAX: (804) 355-4684

# CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

> James V. Ingold
> Office of the Attorney General
> 900 E. Main Street
> Richmond, Virginia 23219
> JIngold@oag.state.va.us

>                    /s/
> Rebecca K. Glenberg (VSB No. 44099)
> American Civil Liberties Union of Virginia
>    Foundation, Inc.
> 530 E. Main Street, Suite 310
> Richmond, Virginia 23219
> (804) 644-8080
> (804) 649-2733 (FAX)
> rglenberg@acluva.org